UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ACUITY, A MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 4:17-CV-02197 JAR<br>) |
| KELLY MARIE SIMLER, et al., | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on cross Motions for Summary Judgment filed by Plaintiff Acuity, a Mutual Insurance Company's ("Acuity") and Defendants Kelly Marie and Scott Simler. (Docs. 61, 62.) Dubuque Paint, Gartner, State Farm, and Guy have joined the Simlers' motion. (Docs. 65, 73, 77, 79.) Also pending is Plaintiff's Motion to Deposit Funds. (Doc. 34.)

### I. BACKGROUND

Plaintiff alleges the following: On September 6, 2016, Defendant Kim Ross, an employee of Defendant Dubuque Paint Equipment, Inc. ("Dubuque Paint"), was involved in a motor vehicle accident on Interstate 70 in Montgomery County, Missouri ("the Collision"). (Doc. 40 at ¶ 20.) Also involved in the Collision were Defendants Kelly and Scott Simler, Linda Gartner, and Terrell Guy. (*Id.* at ¶¶ 21-23.) At the time, Dubuque Paint was covered under a business auto policy ("the Auto Policy") and a commercial excess policy ("the Excess Policy") (together, "the Policies"). (*Id.* at ¶¶ 18-19.) The Simlers, Gartner, and Guy all filed claims

1

against the proceeds of those policies. (*Id.* at ¶¶ 21-23.) The Simlers and Gartner also filed suit against Ross and Dubuque Paint. (*Id.* at ¶¶ 21-22.)

In light of the Defendants' multiple competing claims and lawsuits, Plaintiff filed this action, advancing two counts: a declaratory judgment count seeking a court order declaring that Plaintiff's liability is limited to $2 million ($1 million per "Accident" or "Occurrence," per policy); and an interpleader count allowing it to deposit the $2 million with the Court and be discharged from further obligations. (*Id.* at ¶¶ 28-38.) Also named as defendants are LM General Insurance Company ("LM General"), which insured Kelly Simler at the time of the Collision; State Farm Fire & Casualty Company ("State Farm"), which insured Gartner at the time of the Collision; Progressive Casualty Insurance Company ("Progressive"), which insured Guy at the time of the Collision; and Hartford Insurance ("Hartford"), which provided workers' compensation benefits to Kelly Simler following the Collision. (*Id.* at ¶¶ 24-26.)

All of the defendants filed individual answers, except for Ross and Progressive. (Docs. 41, 50, 51, 54, 55, 56, 58, 59.) In their answers, the Simlers and Guy each advanced a counter-claim for declaratory judgement, seeking a court order declaring that Plaintiff's liability limit is $1 million per *person*, per policy. (Docs. 51, 10.)[1] Gartner and State Farm assert in their answers that the liability limit is $1 million per *vehicle*, per policy, though neither advances a formal counter-claim. (Docs. 55, 56.) LM General, Hartford, and Dubuque Paint each deny Plaintiff's $1-million-per-Accident liability limitation assertion but offer no express alternative. (Docs. 41, 50, 54.)

Plaintiff filed a Motion to Deposit Funds, seeking to place in the Court's registry $2 million. (Doc. 34.) Meanwhile, the Simlers filed a Motion for Summary Judgment on their

---

[1] The Court notes that Guy does not include the counter-claim in his answer to Plaintiff's amended complaint, (Doc. 59).

2

counter-claim for declaratory judgment. (Doc. 61.) In response, Plaintiff filed its own Motion for Summary Judgment on its declaratory judgment count. (Doc. 62.) Because the Court believes that the amount deposited by Plaintiff caps the Court's jurisdiction over the interpleader count, it deferred ruling on the Motion to Deposit Funds pending its resolution of the cross motions for summary judgment. (Doc. 72.) Since then, Dubuque Paint, Gartner, State Farm, and Guy have joined the Simlers' motion. (Docs. 65, 73, 77, 79.) LM General and Hartford have filed with the court memoranda neither supporting nor opposing either motion. (Docs. 75, 76.)

## II. LEGAL STANDARD

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* "The basic inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the movant does so, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson*, 477 U.S. at 249.

3

In determining whether summary judgment is appropriate in a particular case, the Court reviews the facts in a light most favorable to the party opposing the motion and gives that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). In considering a motion for summary judgment, the Court may not make credibility determinations, weigh the evidence, or draw inferences from the facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

### III. DISCUSSION

#### a. The Court need not decide the choice-of-law issue at this time because the law of Wisconsin and Iowa do not conflict.

As an initial matter, the Court must address which state's laws govern the interpretation of the Policies. The Policies contain no choice-of-law provision. (*See generally*, Docs. 62-1, 62-2.) In the absence of an express choice-of-law provision, federal district courts sitting in diversity jurisdiction apply the forum state's choice-of-law rules. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991) (citing *Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). "In insurance contract disputes, Missouri follows Sections 188 and 193 of the Restatement (Second) of Conflict of Laws." *St. Paul Fire & Marine Ins. Co. v. Bldg. Const. Enterprises, Inc.*, 484 F. Supp. 2d 1004, 1006 (W.D. Mo. 2007), *aff'd*, 526 F.3d 1166 (8th Cir. 2008) (citing *Viacom, Inc. v. Transit Cas. Co.*, 138 S.W.3d 723, 724-725 (Mo.2004)). Those sections call on courts to consider several key contacts between the parties to the contract and the various potential states, such as the place of contracting, the place of negotiation of the contract, the place of performance, and the parties' states of incorporation. *See* Restatement (Second) of Conflict of Laws § 188 (1971).

4

The Simlers suggest that the Court must apply the law of either Wisconsin or Iowa—the states where Acuity and Dubuque Paint are headquartered and where the negotiation and execution of the contract occurred. (Doc. 61 at 6-7.) However, the Court agrees with Acuity that both states agree as to the laws relevant to this case. (Doc. 68 at 2.) Importantly, both states require ambiguities in contracts to be strictly construed against the drafter. *Richland Valley Prod., Inc. v. St. Paul Fire & Cas. Co.*, 201 Wis. 2d 161, 168 (Ct. App. 1996); *State Auto. & Cas. Underwriters by Auto. Underwriters v. Hartford Acc. & Indem. Co.*, 166 N.W.2d 761, 763 (Iowa 1969). In addition, both states have adopted the "cause theory." *Just v. Farmers Auto. Ins. Ass'n*, 877 N.W.2d 467, 480 (Iowa 2016); *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 759 N.W.2d 613, 622 (Wisc. 2009). Thus, the Court need not decide which state's laws govern the interpretation of the Policies.

### b. Plaintiff is entitled to summary judgment.

As noted, the only issue raised in the underlying motions for summary judgment is whether under each Policy liability is limited to $1 million per "Accident" or "Occurrence," or to $1 million per person. There is no genuine dispute of material fact: the Policies are attached as exhibits to the Simlers' motion and the language speaks for itself. (Docs. 61-1, 61-2.) The interpretation of policy language is a question of law. *Just*, 877 N.W.2d at 471; *Plastics Eng'g Co.*, 759 N.W.2d at 620.

On the first page of the Auto Policy is a SCHEDULE OF COVERAGES AND COVERED AUTOS limiting liability to "[$]1,000,000 each *accident*." (Doc. 61-1 at 2.) In SECTION II – LIABILITY COVERAGE, it reads, in relevant part, "Regardless of the number of . . . claims made or vehicles involved in the *accident*, the most we will pay for the total of all damages . . . resulting from any one *accident* is the Limit of Insurance for Liability Coverage

5

shown in the [SCHEDULE OF COVERAGES]." (*Id.* at 12.) Under SECTION V – DEFINITIONS, "Accident" is defined as "continuous or repeated exposure to the same conditions resulting in *bodily injury* or *property damage*." (*Id.* at 16.) In turn, "Bodily Injury" is defined as "bodily injury, sickness or disease sustained by a person including death resulting from any of these." (*Id.*)

Meanwhile, page three of the Excess Policy limits liability to $1 million for "[e]ach Occurrence." (Doc. 61-2 at 3.) "Occurrence" is defined in an amendment. In one subsection, Occurrence incorporates Accident and its definition: "With respect to bodily injury to persons other than your employees..., an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 20.) In another, Occurrence is defined as: "With respect to offenses committed by the insured resulting in personal injury or advertising injury sustained by any one person or organization." (*Id.*)

The Simlers argue that because the definitions of Accident and Occurrence include Bodily Injury, and because the definition of Bodily Injury includes the words "a person," the Policies' liability limitations ultimately boil down to per-person amounts. (Doc. 61 at 8-14.) Said differently, the Simlers argue that each person who suffered bodily injury in the September 6, 2016, Collision qualifies as a separate Accident or Occurrence with an individual liability limit of $1 million per policy. (*Id.*)

At the very least, the Simlers assert, the use of "a person" in the definition of Bodily Injury creates an ambiguity in the definitions of Accident and Occurrence that the Court should construe against Plaintiff. (*Id.*) "'[A] policy is ambiguous if the language is susceptible to two *reasonable* interpretations' when the contract is read as a whole." *Just*, 877 N.W.2d at 471 (quoting *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa

6

2015)); *see also Folkman v. Quamme*, 665 N.W.2d 857, 865 (Wisc. 2003). "If the policy is ambiguous, [the court adopts] the construction most favorable to the insured." *Just*, 877 N.W.2d at 471 (quoting *Boelman*, 826 N.W.2d at 502)); *see also Folkman*, 665 N.W.2d at 865.

Plaintiff responds that the Simlers' "exercise of substituting the policy definitions" is unnecessary because the definition of Accident is not ambiguous. (Doc. 68 at 5.) It points to the language in Section II.C stating that the liability limitation is not affected by "the number of . . . claims made or vehicles involved" as further evidence that the Simlers' interpretation is untenable. (*Id.* (quoting Doc. 61-1 at 12)). On that point, Plaintiff argues that the Simlers' interpretation could lead to virtually unlimited liability in a scenario where an insured struck a train or toppled a building causing bodily injury to hundreds of people. (*Id.* at 6.)

The Court agrees with Plaintiff. The definition is not ambiguous and the Simlers' proposed interpretation is not reasonable. *Just*, 877 N.W.2d at 471; *Folkman*, 665 N.W.2d at 865. The Court posits that a reasonable insured would commonly understand "accident" in this context to mean the single combination of a series of events that resulted in multiple vehicles colliding with one another, rather than referring to one individual's bodily injury. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013) (holding that a term's plain meaning "generally prevails"); *Town Bank v. City Real Estate Dev., LLC*, 793 N.W.2d 476, 484 (Wisc. 2010). Indeed, the Court strains to imagine a reasonable insured who, as the Simlers' interpretation requires, would describe a single car hitting a tree as four accidents merely because all four passengers were injured. Lacking ambiguity, the term Accident is given its plain meaning as argued by Plaintiff. Because the Collision represents a single Accident under the Auto Policy, and therefore a single Occurrence under the Excess Policy, the Court concludes that Plaintiff's maximum total liability is $2 million.

7

Courts in both Wisconsin and Iowa agree with this Court's reasoning. In *Plastics Eng'g Co.*, the Wisconsin Supreme Court explained that the state applies the "cause theory," which holds that "where a single, uninterrupted cause results in all of the injuries and damage, there is but one 'accident' or 'occurrence.'" 759 N.W.2d at 622 (quoting *Welter v. Singer*, 376 N.W.2d 84 (Wisc. Ct. App. 1985)). In *Just*, the Iowa Supreme Court considered whether each vehicle involved in a multi-car collision qualified as an independent "accident" entitled to the full amount of the policy's liability limit.[2] 877 N.W.2d at 467. Although the policy at issue in *Just* did not define "accident," it did include a clause limiting liability "regardless of the number of ... [v]ehicles involved in the auto accident," exactly like the one in the Auto Policy in this case. *Id.* at 472; (Doc. 61-1 at 12). The court stated, "[W]e think what happened on Highway 5 on April 29, 2011, would be commonly described as a 'multi-vehicle accident.'" *Id.* at 472. The court went on to endorse the cause theory, discussing the Georgia Supreme Court's reasoning that in multi-vehicle accidents "'[t]here [is] but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.'" *Id.* at 472, 480 (quoting *State Auto Prop. & Cas. Co. v. Matty*, 690 S.E.2d 614, 617 (Ga. 2010)). Here, there is no dispute that all of the defendants' injuries arose from a single, uninterrupted cause: the September 6, 2016, collision. Thus, there was only one Accident or Occurrence and Plaintiff's maximum total liability is $2 million.

The Simlers correctly note that the definition of Occurrence in the Excess Policy includes the phrase "injury sustained *by any one person*," which they argue means that each person's injury is a separate Occurrence with a separate $1 million liability limit. (Doc. 61 at 13-15

---

[2] The Court notes that this interpretation is very similar to the one put forth by Gartner and State Farm in their Answers. (Docs. 55, 56.)

8

(emphasis added).) Under AMENDMENT TO DEFINITION OF OCCURRENCE, the Excess Policy provides three definitions of Occurrence:

> a. With respect to bodily injury to persons other than your employees and property damage, *an accident, including continuous or repeated exposure to substantially the same general harmful conditions;* ...
>
> b. With respect to bodily injury to your employees arising out of and in the course of their employment by you, the accident or disease which causes the bodily injury; and
>
> c. With respect to offenses committed by the insured resulting in *personal injury or advertising injury*, all such injury sustained by any one person or organization.

(Doc. 61-2 at 20 (emphasis added).) The Simlers argue that the use of "by any one person" in subsection **c.** of the Excess Policy's definition of Occurrence conflicts with the use of "by a person" in the Auto Policy's definition of Accident and creates an ambiguity that must be construed against Plaintiff. (Doc. 61 at 13-15.)

Plaintiff responds that the Excess Policy provides additional coverage for liability arising under either the Auto Policy or under a third policy it issued to Dubuque Paint—a commercial general liability policy ("the General Policy"). (Doc. 68 at 6; Doc. 61-2 at 3 (listing the Auto and General Policies as "underlying insurance").) Plaintiff argues that the definition in subsection **c.** applies only to liability arising under the General Policy, which does not provide coverage for auto collisions. (Doc. 70-1 at 8-9.) Plaintiff asserts that subsection **a.** is the appropriate definition of Occurrence for Excess Policy coverage arising from liability under the Auto Policy and that therefore there is no ambiguity. Said differently, Plaintiff argues that subsection **a.** applies in this case and subsection **c.** does not.

Once again, the Court agrees with Plaintiff. The use of "accident" and the incorporation of that term's definition make it clear that subsection **a.** is the appropriate definition of Occurrence for liability arising under the Auto Policy. (*See also* Doc. 61-1 at 16 (defining Accident with identical language).) At the same time, subsection **c.** refers to personal and

9

advertising injuries arising from offenses committed by the insured—liability expressly covered under the General Policy. (Doc. 70-1 at 6, 8.) The Court therefore concludes that subsection **c.**'s use of "any one person" applies only to claims arising under the General Policy and is therefore irrelevant to its interpretation of Occurrence in this case. Because subsection **a.** uses language identical to the Auto Policy's definition of Accident, the Court concludes that there is no ambiguity.

### IV. CONCLUSION

There is no genuine dispute of material fact as to what the Policies say. The Court finds that the Simlers' interpretations of Accident and Occurrence are unreasonable and further concludes that the terms are not ambiguous. Because the ordinary meaning of "accident" refers to the single cause of the multi-vehicle Collision and not to the multiple injuries that resulted, the Court concludes that Plaintiff is entitled to judgment as a matter of law on its declaratory judgment count. The Court additionally notes that granting Plaintiff's Motion for Summary Judgment (and denying the Simlers' cross motion) resolves the procedural issues preventing the Court from ruling on Plaintiff's Motion to Deposit Funds. In light of its holding on the cross Motions for Summary Judgment, the Court will grant Plaintiff's Motion to Deposit Funds as well.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Acuity, a Mutual Insurance Company's ("Acuity") Motion for Summary Judgment (Doc. 62), is **GRANTED**,

**IT IS FURTHER ORDERED** that Defendants Kelly Marie and Scott Simler's Motion for Summary Judgment (Doc. 61), is **DENIED**, and

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Deposit Funds (Doc. 34), is **GRANTED**.

Dated this 15th day of May, 2018.

                                                            _/s/ John A. Ross_
                                                            **JOHN A. ROSS**
                                                            **UNITED STATES DISTRICT JUDGE**